**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Juan Moscoso Poblete,<br><br>Petitioner<br>v.<br><br>Todd Blanche, et al.,<br><br>Respondents | Case No.: 2:26-cv-01596-JAD-BNW<br><br>**Order Granting Habeas Petition**<br><br>[ECF No. 10] |

Petitioner Juan Moscoso Poblete is a citizen of Chile who was admitted to the United States in 2023 under the Visa Waiver Program. His admission under the waiver program expired in 2024, and he was arrested by Immigration and Customs Enforcement (ICE) agents on May 3, 2026, the same day he was issued a final removal order. Poblete contends that his detention is unconstitutional because he was not given an opportunity to seek release on bond while his immigration proceedings were pending. The government responds that he is subject to mandatory detention because he participated in the Visa Waiver Program. But the government fails to support that theory with any law, and I join the majority of courts in this circuit that have found that detainees who overstay their visa are subject to the detention provisions in 8 U.S.C. § 1226(a), which allow a petitioner to seek bond. And because Poblete has been held in detention for more than six months without any due process, I find that the only appropriate remedy is release.

**Background**

Juan Moscoso Poblete was admitted to the United States under the Visa Waiver Program (VWP) on November 9, 2023.[1] Authorization to remain in the country under that program

[1] ECF No. 10-2 at 3.

expired on February 5, 2024, but Poblete remained in Las Vegas after his authorization expired.[2] ICE agents arrested Poblete on May 3, 2026, for overstaying his visa.[3] He was ordered removed sometime in May.[4] Poblete has been detained at the Nevada Southern Detention Center since his arrest. He has not received any opportunity to challenge his detention or seek bond.

Poblete filed a pro se habeas petition challenging his detention on May 26, 2026.[5] I appointed counsel, and Poblete filed a counseled amended habeas petition on June 17, 2026.[6] He contends that the government violated his due-process rights by (1) failing to afford him a pre-deprivation opportunity to seek bond; (2) failing to conduct a bond hearing at all; (3) issuing a removal order resulting in his arrest without providing him notice and an opportunity to be heard; and (4) forcing him to proceed with his asylum claim "quickly and without a lawyer."[7] The government responds that Poblete has no right to a bond hearing because he overstayed his visa, his expedited-removal proceedings were "authorized under the Visa Waiver Program," and Poblete failed to exhaust his administrative remedies before resorting to habeas relief.[8]

---

[2] *Id.*

[3] *Id.*

[4] Poblete contends that he was ordered removed the day he was arrested, and points to a "Visa Waiver Program Final Administrative Removal Order" signed by a deportation office on May 3, 2026. ECF No. 10-4 at 2. The respondents say that he was ordered removed on May 21, 2026, but they fail to provide any evidence supporting that contention. I don't dwell on this discrepancy because it does not affect my analysis in this case.

[5] ECF No. 1.

[6] ECF No. 10.

[7] *Id.*

[8] ECF No. 18.

## Discussion

### A. This court has habeas jurisdiction over Poblete's claims.

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[9] That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[10]

### B. Poblete's need to exhaust his administrative remedies is excused.

The government contends that Poblete's petition should be denied because he didn't exhaust his administrative remedies.[11] It cites to the Ninth Circuit's opinion in *Laing v. Ashcroft*[12] to contend that a petitioner must first seek a bond determination prior to filing a habeas petition.[13] The Ninth Circuit has explained that "the exhaustion requirement is prudential, rather than jurisdictional, for habeas claims."[14] "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'"[15]

---

[9] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[10] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[11] ECF No. 18 at 4.

[12] *Laing v. Ashcroft*, 370 F.3d 994 (9th Cir. 2004).

[13] ECF No. 18 at 4.

[14] *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

[15] *Id.* (quoting *Laing*, 370 F.3d at 1000).

I find that exhaustion of remedies would be futile here. The government's primary argument in this case is that Poblete isn't entitled to any bond hearing because he was arrested for overstaying his visa. He was never given a bond hearing, so there is no appeal to the Board of Immigration Appeals (BIA) that would exhaust his remedies. And any attempt to do so would almost certainly be rejected by the BIA, as it has held that VWP participants are not entitled to a bond hearing.[16] Under these circumstances, I find it appropriate to waive the exhaustion requirement because further irreparable injury would result from Poblete's continued detention while he goes through the futile process of seeking a bond determination.

**C. Poblete is entitled to the process afforded for noncitizens under § 1226(a).**

Poblete argues that he was arrested and placed in custody without any due-process protections. He did not receive any type of pre-arrest determination of whether he should be entitled to release on bond in lieu of detention, nor did he receive any type of bond hearing while he's been in custody. The government concedes that Poblete did not receive those safeguards. It instead relies on the BIA's decision in *Matter of A.W.*, in which the BIA held that immigration judges (IJs) did not have jurisdiction to set bond for noncitizens in asylum-only proceedings.[17] It states, without support or analysis, that "if [a noncitizen] entered the U.S. on a VWP visa and later violated the terms (e.g., overstayed or entered without permission), and [the noncitizen is] in DHS custody without a formal removal case, [the noncitizen] typically cannot request a bond hearing."[18]

---

[16] *See* ECF No. 18 at 2 (citing *Matter of A.W.*, 25 I&N Dec. 45 (B.I.A. 2009)).

[17] *Id.* at 2.

[18] *Id.*

The majority of district courts in this circuit have rejected the government's argument that noncitizens who were admitted under the VWP and overstayed their visas are subject to mandatory detention.[19] They instead find that those noncitizens are detained under 8 U.S.C. § 1226(a) and are entitled to the bond-hearing mechanisms afforded under that statute. They reject *Matter of A.W.*'s finding that 8 U.S.C. § 1187(b)—the statute that requires a VWP participant to waive the ability to contest any future removal proceedings—contains its own detention authority. Section 1187(b) merely limits a VWP participant's ability to challenge removal, it does not mandate detention while removal proceedings are ongoing. The government does not grapple with this authority and it does not provide any analysis suggesting that some other detention authority applies. So I adopt the reasoning of the many courts that have rejected the government's argument that VWP participants are subject to mandatory detention, and I find that Poblete is instead entitled to the discretionary-detention provisions of § 1226(a).

**D. The government's failure to give Poblete any § 1226(a) protections violates his due-process rights.**

8 U.S.C. § 1226(a) governs detention "pending a decision on whether the [noncitizen] is to be removed from the United States." The statute permits a noncitizen held under this authority to be detained or released on bond and with conditions.[20] When a person is arrested under § 1226(a), an ICE officer makes the initial custody determination and may order release only if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any

---

[19] *See, e.g.*, *Novac v. Bernacke*, 2026 WL 1623191, at *2–3 (D. Nev. June 5, 2026); *Shire v. ICE*, 2026 WL 2280936, at *1 n.1 (D. Nev. Aug. 7, 2026); *He v. Figueroa*, 2026 WL 2268165, at *2–3 (D. Ariz. July 15, 2026); *Quispe v. Chestnut*, 2026 WL 654577, at *2 (E.D. Cal. March 9, 2026); *Cummins v. Becerra*, 2025 WL 3724525, at *3–4 (E.D. Cal. Dec. 23, 2025).

[20] 8 U.S.C. §§ 1226(a)(1)–(2).

future proceeding."[21] The noncitizen may then "request a bond hearing before an IJ at any time before a removal order becomes final" to contest the initial custody determination.[22] He may appeal that decision to the BIA.[23] A noncitizen detained under § 1226(a) may also request a redetermination hearing if he experiences a material change in circumstances.[24] He can appeal the IJ's decision of that redetermination hearing to the BIA too.

The government concedes that Poblete was not given any of these procedural protections. Poblete contends that the government's failure deprived him of his due-process rights. "The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."[25] But the amount of process due to noncitizens "must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."[26] The Ninth Circuit applies the three-factor test outlined in the Supreme Court case *Mathews v. Eldridge*[27] to determine whether a noncitizen's procedural-due-process rights have been violated in immigration-detention situations like this one.[28] Under *Mathews*, courts must consider "*first*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

---

[21] 8 C.F.R. § 236.1(c)(8).

[22] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

[23] *Id.* (citing 8 C.F.R. § 236.1(d)(1)).

[24] 8 C.F.R. § 1003.19(e).

[25] *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

[26] *Id.* at 1206.

[27] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[28] *Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies to a noncitizen's challenge to detention under § 1226(a)).

additional or substitute procedural safeguards; and *finally*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[29]

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action."[30] Poblete has been detained for about six months. But when evaluating Poblete's interests under the first prong, the court "cannot simply count his months of detention and leave it at that."[31] It must also consider "the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."[32] Here, Poblete has received no process to challenge his detention, and the government's position that he is subject to mandatory detention under the VWP forecloses his ability to seek any meaningful opportunity to be heard on his request for release on bond. I find that the deprivation of Poblete's liberty interest weighs in favor of relief.

I also conclude that there is a substantial risk of erroneous deprivation of Poblete's interest based on the government's reliance on its argument that Poblete is in a class of noncitizens that is subject to mandatory detention. Poblete has been detained for six months, and throughout that time he had no opportunity to contest his detention. I find that Poblete suffers a severe risk of erroneous deprivation of his liberty interest absent these procedures, which also weighs in favor of relief.

---

[29] *Mathews*, 424 U.S. at 335 (cleaned up).

[30] *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (finding that the interest in not being detained "is the most elemental of liberty interests").

[31] *Rodriguez Diaz*, 53 F.4th at 1208.

[32] *Id.*

It is undisputed that the government has a strong interest in enforcing immigration laws, protecting the public from "dangerous criminal" noncitizens, and securing the removal of noncitizens who are subject to final orders of removal.[33] But I cannot conclude that the government's interests outweigh the petitioner's in this case. The parties' interests are not mutually exclusive: the government's interest in enforcing the immigration laws and protecting the public from dangerous noncitizens can still be served while offering due-process protections to noncitizens in its custody.

Courts have "a fair amount of flexibility" in deciding habeas relief.[34] Because Poblete has been detained for more than six months without any due-process protections, I find that his release from custody is the appropriate remedy here.[35] And because this finding affords Poblete the relief he seeks, I need not and do not reach the other claims in his amended petition.[36]

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Juan Moscoso Poblete's amended habeas petition **[ECF No. 10] is GRANTED**. **Poblete must be released from detention within three days, subject to reasonable conditions of supervision to be imposed by Immigration and**

---

[33] *Id.*

[34] *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005).

[35] *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (noting that release is the "typical remedy" for "unlawful executive detention").

[36] It appears that Poblete's removal order has become final while his habeas petition was pending. Poblete contends that this does not affect the validity of his detention because it was unlawful from its inception. ECF No. 24. The respondents did not respond to this argument or confirm his current detention status. I find, as other courts have, that release is appropriate regardless of whether the statutory authority underpinning his detention has changed because his detention was unconstitutional from the beginning. *See, e.g.*, *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1158–59 (S.D. Cal. 2025).

**Customs Enforcement under 8 U.S.C. § 1226(a)(2). Imposition of those conditions must not impede Poblete's timely release.**

IT IS FURTHER ORDERED that respondents must file and serve on petitioner's counsel:

(1) notice of the date, time, and location of Poblete's release at least 24 hours before the release is set to occur, and

(2) within five days of this order, notice that Poblete's release was effectuated.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Juan Moscoso Poblete under any pre-removal statutory authority absent clear-and-convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that he is a flight risk or danger to the community such that his physical custody is legally justified.**

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

**The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.**

U.S. District Judge Jennifer A. Dorsey
November 13, 2026